UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY AINSWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-342-JED-FHM |
| | ) |
| TRANSUNION, EXPERIAN | ) |
| EQUIFAX, U.S. DEPARTMENT OF | ) |
| EDUCATION, NELNET, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on the motions to dismiss of Defendant United States Department of Education (Doc. 15, 24) and Defendant Nelnet, Inc. (Doc. 34).

**I.    BACKGROUND**

This action stems from the handling of student loans made to Plaintiff Jay Ainsworth, who proceeds pro se, and the effect that handling has had on his credit score.[1] Mr. Ainsworth alleges that Defendant United States Department of Education provided the major credit reporting agencies (Defendants Experian, TransUnion, and Equifax) with incorrect information regarding the status of his student loans. (Doc. 1 at 3). He further alleges that the reporting agencies "refused to stop reporting it as a bad account despite providing them with more than adequate documentation." (Doc. 1 at 3). Due to the resulting

---

[1] Since filing his initial Complaint (Doc. 1), Mr. Ainsworth has amended the pleading five times, all without first seeking the Court's leave. (*See* Docs. 5, 7, 8, 17, 21). As Federal Rule of Civil Procedure 15(a) permits only a single amendment as a matter of course, the latter four amendments arguably ought to be stricken. Nevertheless, in recognition of Mr. Ainsworth's pro se status, and because no party has moved to strike the documents, the Court will construe the various filings as if they had been properly filed.

reduction in his credit score, he claims, he was unable to refinance his home at a lower interest rate. (Doc. 1 at 4).

Mr. Ainsworth further alleges that his student loans "should never have been given to any of the 3 credit reporting agencies." (Doc. 5). In 2012, he claims, the loans "were placed in a forbearance status" and remained there until they were "forgiven." He further alleges that "[t]hey were placed in a 3 year waiting period during the forbearance period." (Doc. 5.) "They were never in repayment status," he alleges. (Doc. 5). Nevertheless, he claims, "interest was added to these loans while they were in a forbearance state," which caused his credit reports "to have a higher credit income ratio along with showing payments as past due." (Doc. 5). He further alleges that he disputed the mistakes several times but was told the information was correct. (Doc. 5). When he asked for the information being relied upon, he never received anything. According to Mr. Ainsworth, the loans "were the only items listed as unsatisfactory." (Doc. 5). He estimates that these errors cost him $35,610. (Doc. 5).

Mr. Ainsworth's Complaint and subsequent amendments provide almost no background about his loan or the timeline of events surrounding his claims, but the court's summary of the facts he alleged in a prior, related case help to fill in some of the gaps. *See Ainsworth v. U.S. Dep't of Educ.*, 2019 WL 6134482 (N.D. Okla. Nov. 19, 2019) (No. 19-CV-0050-CVE-FHM) [hereinafter, *Ainsworth I*]. In *Ainsworth I*, Mr. Ainsworth sued only the U.S. Department of Education, claiming, as here, that the Department mistakenly reported his student loans as delinquent. In that case, however, Mr. Ainsworth appears to have provided the court with far more detailed allegations and documentation. According

to the court's summary of the allegations in that case, Mr. Ainsworth's loans were discharged in 2012 due to Total Permanent Disability, but the discharge was provisional, subject to a three year monitoring period during which he was required to prove that his income remained below the eligibility threshold. *Id.* at *1. Before the period was complete, Mr. Ainsworth was informed that his loan was being reinstated because he had failed to submit the required information for the period between January 1, 2014 to June 4, 2015. *Id*. Ainsworth claimed this was in error, as he had actually mailed the documentation on August 13, 2015. The Department, meanwhile, claimed it only received the information after Mr. Ainsworth brought his suit. Nevertheless, the Department ultimately decided to accept the documentation as if it had been received by the required deadline. As a result, Mr. Ainsworth's loan was again discharged, and the government returned the income it had garnished against the outstanding loan balance. *Id.* Despite the Department's acquiescence, Mr. Ainsworth pressed his suit, claiming damages resulting from his inability to refinance his home, unwanted communications from the Department, and an inability to purchase airline tickets due to his garnished income. *Id.*

The court construed Mr. Ainsworth's allegations as bringing claims under the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA),[2] ultimately dismissing them both. *Id.* at *2. The court concluded that it lacked subject matter jurisdiction to hear Mr. Ainsworth's FDCPA claim because the government had not waived its sovereign immunity with respect to such claims. The court reasoned that the same was

---

[2] The FDCPA and FCRA are codified at 15 U.S.C. §§ 1692, et seq., and 15 U.S.C. §§ 1681, et seq., respectively.

3

likely true for FCRA claims but, recognizing a split of authority on the issue, opted to dismiss on the grounds that Mr. Ainsworth's allegations failed to state a proper FCRA claim. *Id.* at *3.

After the court ruled in *Ainsworth I*, Mr. Ainsworth filed an amendment to his present Complaint clarifying that he is seeking damages from Nelnet and the defendants in this case because the Department "was a government agency and therefore they [sic] were exempt from paying any compensation." (Doc. 7).

## II.    DISCUSSION

Both the Department of Education and Nelnet move to dismiss under Rule 12(b)(6) for failure to state a claim. Additionally, the Department moves to dismiss under 12(b)(1), asserting that the Court lacks subject matter jurisdiction to hear Mr. Ainsworth's claims against it.

The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that the parties might present at trial, but to assess whether the plaintiff's complaint is legally sufficient to state a claim upon which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts permit the court to infer

merely the possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief. *Id.* at 679.

On a Rule 12(b)(1) motion, the party invoking the court's jurisdiction bears the burden of establishing that jurisdiction exists. *Merida Delgado v. Gonzales*, 428 F.3d 916, 918–19 (10th Cir. 2005). Because federal courts are courts of limited jurisdiction, there is a presumption against the exercise of federal jurisdiction. *Id.* at 19.

In applying these standards, the Court is mindful that Mr. Ainsworth proceeds pro se. While pro se pleadings must be liberally construed and held to less stringent standards than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

  **A. Claims against the Department**

It is not entirely clear on what theory Mr. Ainsworth seeks to recover from the Department of Education. Mr. Ainsworth mentions the FDCPA specifically in one of the amendments to his Complaint and in his Response to the Department's Motion (*see* Docs. 17, 23), but the Department argues—reasonably—that Mr. Ainsworth's claims can also be

construed as alleging a violation of the FCRA. (Doc. 15 at 5). The Court therefore construes Mr. Ainsworth's allegations as bringing claims under both the FDCPA and the FCRA.

The Court has no jurisdiction to hear Mr. Ainsworth's FDCPA claim. "It has long been established . . . that the United States, as sovereign, 'is immune from suit save as it consents to be sued.'" *United States v. Murdock Mach. and Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). And consent exists only where Congress has unequivocally expressed its intent to waive the government's sovereign immunity. *Id.* Like the court in *Ainsworth I*, this Court finds no such waiver in the FDCPA. *See Ainsworth I*, 2019 WL 6134482, at *2; *accord Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007); *Williams v. U.S. Dist. Court for Dist. of Newark, N.J.*, 455 F. App'x 142, 143 (3d Cir. 2011) (unpublished).

To the extent Mr. Ainsworth alleges a claim under the FCRA, his claim is precluded under the doctrine of res judicata. The doctrine of res judicata prevents assertion of a claim that could have been brought in an earlier proceeding that culminated in the entry of a final judgment. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). The doctrine applies when (1) there has been entry of a final judgment in the earlier proceedings, (2) the identity of the parties is the same in both suits, and (3) the cause of action is the same in both suits. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). If these elements are met, res judicata is appropriate unless the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the earlier proceedings. *Id.*

Here, all the elements are met. In *Ainsworth I*, Mr. Ainsworth made the same allegations, albeit with more factual detail, against the Department. *See Ainsworth I*, 2019

WL 6134482. And the court, after dismissing for failure state a claim under the FRCA, entered a judgment of dismissal the same day. *See* J., *Ainsworth I*, Doc. 32. Because Mr. Ainsworth's claim has already been decided by another court, he is precluded from seeking relief on the same claim here.

Finally, in addition to the reasons already given, the Court would dismiss both of Mr. Ainsworth's claims for insufficient service of process. Rule 4 of the Federal Rules of Civil Procedure provides as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Here, when 90 days passed without service on any defendant, the Court gave Mr. Ainsworth until November 26, 2019 to show that all defendants in this case had been properly served. (Doc. 4). To date, no summons has been returned as executed with respect to the Department, and there is no evidence that Mr. Ainsworth has served the United States as required under Rule 4(i).[3]

Normally, a plaintiff proceeding in forma pauperis is entitled to rely upon the Court to effect service properly, *Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003), but the United States Marshals Service cannot serve process unless the plaintiff completes the summons and submits it with the service form (USM-285) and complaint. Because no summons was ever returned, whether executed or not, the available evidence suggests that

---

[3] A summons for the Department was issued on Nov. 26, 2019, (Doc. 6), but it was not returned as executed. According to the Department, it received a copy of the plaintiff's Complaint on December 11, 2019 with no envelope or summons. (Doc. 15 at 14).

Mr. Ainsworth did not follow these procedures. The Court would be inclined to overlook such a technical oversight were Mr. Ainsworth unfamiliar with this process, but Mr. Ainsworth had previously been instructed on how to serve papers through the Marshals Service. *See* Order, *Ainsworth I*, Doc. 3 (describing in detail the process for serving defendants through the Marshals Service).[4] Consequently, even if Mr. Ainsworth's allegations stated a claim over which the Court had jurisdiction, the Court would still dismiss due to his failure to serve the Department as directed.

### B. Claims against Nelnet

Mr. Ainsworth's allegations fail to state a claim against Defendant Nelnet. Neither his Complaint nor any of the subsequent amendments include any allegations of wrongful conduct of any kind against Nelnet. The only reason given for joining Nelnet at all was his inability to obtain damages against the Department of Education in *Ainsworth I*. (*See* Doc. 7). The closest his pleadings come to attributing any kind of fault to Nelnet is his claim that, "[i]f any of the defendants would have reviewed the documentation they had provided me. They [sic] would have seen that their records were incorrect." (Doc. 7). Given the context of the allegation, this seems to be a reference to the credit reports provided to him by the agencies. The pleadings never say what incorrect information Mr. Ainsworth believes Nelnet to have had or how its failure to discover the error harmed him. Because

---

[4] Mr. Ainsworth cannot plausibly claim that he did not receive the court's order or that he was otherwise unaware of the steps he was required to take in order effect service of process through the Marshals Service. The instructions are attached as an exhibit to his Response. (Doc. 36 at 9–10).

his pleadings are bereft of any allegations against Nelnet, there is no legal theory under which Mr. Ainsworth can be said to have plausibly stated a claim entitling him to relief.

In his Response (Doc. 36), Mr. Ainsworth attempts to salvage his claims against Nelnet by making new allegations. In so far as the Court is able to follow their thread, he appears to allege that Nelnet failed to consolidate his loans and wrongfully reported them to the credit agencies. Neither of these theories is consistent with the thrust of the allegations made in his Complaint and subsequent amendments. In his pleadings, he never mentions the consolidation of his loans, and he alleges that it was the Department of Education, not Nelnet, who gave bad information to the credit reporting agencies, (*see, e.g.*, Doc. 1 at 3). Given these inconsistencies, it would be unfairly prejudicial to Nelnet to consider the new allegations, s*ee Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001), particularly given the number of amendments Mr. Ainsworth has already filed.

Moreover, even if the Court were to consider the new allegations, his claims would still fail. To the extent Mr. Ainsworth would allege that Nelnet (as opposed to the Department of Education) violated the Fair Credit Reporting Act by providing incorrect information to the credit reporting agencies, his allegations fail to state a cause of action. Nelnet concedes that it is a "furnisher of information" within the meaning of the Act, which imposes certain duties on furnishers regarding the accuracy of the information they provide to credit reporting agencies. 15 U.S.C. 1681s-2(a). A breach of those duties, however, does not give rise to a private right of action. *Sanders v. Mt. Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012). The private right of action arises when the furnisher, having been notified by a credit reporting agency that the information is disputed, fails to respond

as required under the statute. *Id.*; *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1058–60 (9th Cir. 2002) (setting out the duties of those who furnish information to credit reporting agencies and explaining the FCRA's enforcement structure). Thus, in order to state an FCRA claim against Nelnet, Mr. Ainsworth would have to allege (1) that Nelnet provided incorrect information to reporting agencies, (2) that he initiated the dispute process with the agencies, and (3) that Nelnet failed to respond as required after being notified by the agencies of the dispute. As he has not done so, his allegations fail to state a claim under the FCRA.

To the extent Mr. Ainsworth would allege a claim against Nelnet under the FDCPA, that claim would also necessarily fail. A person is not a "debt collector" within the meaning of the FDCPA when the collection at issue "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Here, the credit reports submitted by Mr. Ainsworth with his amended Complaint show that Nelnet was already servicing his loan when the default was reported in 2016. (Doc. 21 at 14–15). Moreover, Mr. Ainsworth's correspondence with Nelnet, which he attached to his complaint in *Ainsworth I*, shows that Nelnet was operating as the servicer on Mr. Ainsworth's loan as early as 2012, well before his loan was ever reinstated, let alone in default. *See* Complaint Amendment, *Ainsworth I*, Doc. 21-1 at 12, 38. Because Nelnet acquired Mr. Ainsworth's loans before they were in default, Nelnet is not a "debt collector" for the purposes of the FDCPA and therefore not subject to liability under the Act.

### III.     CONCLUSION

For the reasons explained above, the motions to dismiss filed by Defendant United States Department of Education (Doc. 15, 24) and Defendant Nelnet, Inc. (Doc. 34) are hereby **granted.** Because Mr. Ainsworth has not managed to state a claim against either defendant despite repeated addendums to his original Complaint, and because his own allegations preclude recovery, the Court declines to grant him further leave to amend. Accordingly, Clerk of Court is instructed to terminate the defendants as parties.

SO ORDERED, this 28th day of July, 2020.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT